**FEDERAL NATIONAL MORTGAGE ASSOCIATION, a corporation organized and existing pursuant to Title III of the National Housing Act, as amended, Plaintiff,**

v.

**Harold J. DEZIEL and Mary E. Deziel, his wife, Defendants.**

**No. 14388.**

United States District Court
E. D. Michigan, S. D.
Jan. 12, 1956.

**860**

Marshall M. Massey, Detroit, Mich., for plaintiff.

George Stone, Detroit, Mich., for defendants.

PICARD, District Judge.

Action of mortgage foreclosure and for deficiency judgment. The facts have been stipulated.

### Findings of Fact

September 9, 1950, defendants, husband and wife, purchased a home in Mt. Clemens, Michigan, executing an F.H.A. mortgage thereon in the amount of $9,800 as security for defendants' note of even date and amount—both delivered to the National Mortgage Corporation of Michigan, the lender, and subsequently, on October 10, 1950, assigned to plaintiff, a corporation organized pursuant to Title 12 U.S.C.A. § 1716 et seq.

After assignment, defendants made payments substantially in accordance with the requirements of the note until September 1, 1953. All payments due after that date remain unpaid.

On June 4, 1954, plaintiff started foreclosure proceedings declaring the entire amount of the obligation due and owing pursuant to the terms of the mortgage. Holder also had power of sale. The foreclosure proceedings were by advertisement under Michigan's foreclosure statute and the provisions of that statute were complied with in every respect. On September 2, 1954, plaintiff bought in the property at the foreclosure sale receiving sheriff's deed. These proceedings would usually have extinguished defendants' rights in the property but for the fact that during the interim between commencement of foreclosure proceedings and the actual sale, defendant, Harold J. Deziel, without the knowledge of plaintiff, had joined the armed forces of the United States. Thus the entire proceedings were invalidated under Title 50 U.S.C.A.Appendix, § 532(2) which restricts such proceedings except upon agreement of the parties or upon court order, granted only after judicial determination that the serviceman's

"ability * * * to comply with the terms of the obligation is not materially affected by reason of his military service".

Thereupon this present action was instituted for the purpose of securing such court order, plaintiff asking foreclosure, personal deficiency judgment and other relief. Defendants filed their answer through counsel (Harold J. Deziel is still on active duty in the armed forces) including therein a prayer for relief pursuant to 50 U.S.C.A.Appendix, §§ 532 and 590, commonly referred to as the Soldiers' and Sailors' Civil Relief Act of 1940 as amended.

Both parties have filed briefs and some testimony was taken in open court. Plaintiff asserts that under the facts defendants are not entitled to relief under the Soldiers' and Sailors' Relief Act for two reasons:

(a) they had been long in default before the husband entered military service; and

(b) Deziel's ability to pay is not materially affected by his military service.

Not only is it plaintiff's contention that defendants' paying ability was not impaired as a result of the husband entering military service but that on the contrary it was enhanced. On the other hand, defendants contend that their default prior to Mr. Deziel's entry into military service does not ipso facto divest the court of its discretion to grant

a stay of foreclosure; that in fact, part of defendants' indebtedness, insofar as plaintiff is concerned in this action, arose subsequent to the husband's present period of military service and as a result plaintiff has no right to resort to the acceleration clause in the mortgage thus making demand for payment of the entire amount due thereunder.

The facts further show that Harold J. Deziel was first employed by Michigan Bell Telephone Company in August 1927, but most of the time between May 1942 and October 1945 he was in military service. During the period from November 1945 to November 1951 he was employed by Bell Telephone at a monthly salary ranging from $435 to $485 and during the latter part of this employment he and his wife undertook the financial obligation involved in this action. In August 1951 Deziel reentered military service and remained until May of 1953, during all of which time defendants met their obligation with relative promptness.

Deziel returned to Bell Telephone in May 1953 and worked there until May 1954 when he was discharged, evidently because he only worked spasmodically. But while employed by Bell he received a monthly salary of $575 when he did work. The reasons for his absenteeism are not given, but are designated in the stipulation as "furlough" or "leave of absence". From the stipulation it appears that the husband, Deziel, received pay for approximately six months between May 1953 and May 17, 1954, the date of the termination of his employment at Bell Telephone. On June 28, 1954, the date Deziel entered the army, defendants' only income between May 17, 1954, to June 28, 1954, was $17 weekly, representing the earnings of Mary Deziel, the wife. Mrs. Deziel also testified that her husband sought employment just prior to the time he entered the army but was unsuccessful and that her husband and herself submitted a proposal to plaintiff to make regular payments on the delinquent installments while the current installments were met

as they fell due. This offer she says was rejected by plaintiff. On the contrary plaintiff denies that such an offer was ever made but that a similar proposition was suggested by plaintiff to the defendants which was rejected.

Some time subsequent to June 1954, Mary Deziel obtained employment at the Selfridge Field Air Base where she currently has a take-home pay of $180 monthly, which amount is augmented by an allotment of $91.30 she receives by virtue of her husband being in the army. In addition the husband's army pay is $92.60 thus bringing defendants' current net at the present time to $363.90.

In June 1954, when Deziel entered the army, defendants owed plaintiff about $9,271.08 plus interest. Their obligation is now about $10,272.93.

### Conclusions of Law

Section 532 of Title 50 U.S. C.A.Appendix, which is decisive of the issue involved, reads as follows:

"(1) The provisions of this section shall apply only to obligations secured by mortgage, trust deed, or other security in the nature of a mortgage upon real or personal property owned by a person in military service at the commencement of the period of the military service and still so owned by him which obligations originated prior to such person's period of military service.

"(2) In any proceeding commenced in any court during the period of military service to enforce such obligation arising out of nonpayment of any sum thereunder due or out of any other breach of the terms thereof occurring prior to or during the period of such service the court may, after hearing, in its discretion, on its own motion, and shall, on application to it by such person in military service or some person on his behalf, unless in the opinion of the court the ability of the defendant to comply with the terms of the obligation is not ma-

terially affected by reason of his military service—

"(a) stay the proceedings as provided in this Act [section 501 et seq. of this appendix]; or

"(b) make such other disposition of the case as may be equitable to conserve the interests of all parties."

Congress made manifest its intent that as a condition precedent to relief it must appear that the serviceman's ability to meet his obligations had been materially affected by reason of his military service. Precisely how this is to be determined is not stated. But while it does appear that the question of the husband's industriousness might not have been determined in his favor here had this court insisted upon more evidence, nevertheless there are some signs that it might have been. There still remains the fact that he did meet his contractual obligations at least during the first three years. In any event Congress did not intend to punish the unfortunate—the man who can't get a job as against the man who can or has one. The mere fact standing alone that the last nine months put Deziel in debt to plaintiff is not enough. Relief under the act should not be left to the fortune of the economic winds.

"* * * the Act must be read with an eye friendly to those who dropped their affairs to answer their country's call." Le Maistre v. Leffers, 333 U.S. 1, 68 S.Ct. 371, 373, 92 L.Ed. 429.

While defendants are entitled to relief, plaintiff also has rights which should and must be protected. Therefore this court, using its equity power of "discretion", grants a stay of foreclosure conditioned upon defendants' payment of $100 monthly for a period of one year, payment beginning with February 1, 1956 and upon expiration of the one year period defendants will be required to pay $50 monthly until the principal and interest delinquencies are erased, as well as the regular monthly payments. This may appear harsh but the court is giving defendants their chance to save the equity which the husband has evidently done his best to jeopardize or dissipate.

This court will retain jurisdiction of the cause to facilitate enforcement of this order.